IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO RODRIGUEZ, ) | |
| ) | |
| Plaintiff, ) | No. 1:22-cv-6121 |
| ) | |
| v. ) | |
| ) | Judge _____ |
| MUTUAL OF OMAHA, ) | |
| ) | |
| Defendant. ) | |

## **PLAINTIFF'S ORIGINAL COMPLAINT,**
## **REQUEST FOR DISCLOSURE and JURY DEMAND**

1. NOW COMES MARIO RODRIGUEZ, hereinafter referred to as "Plaintiff", and brings this action against MUTUAL OF OMAHA, hereinafter referred to as "Defendant."

2. Plaintiff brings this action to secure all benefits, described as critical illness policy benefits, to which Plaintiff is entitled under the critical illness insurance policy underwritten and administered by Defendant.

3. Defendant has underwritten and administered the policy and has issued a denial of the benefits claimed under the policy by the Plaintiff. The policy at issue can be identified as Policy Number CP4UI-977705-94M for critical illness disability.

## **I. PARTIES**

4. Plaintiff is a citizen and resident of Cook County, Illinois.

5. Defendant is a properly organized business entity doing business in the State of Illinois. Defendant may be served with process by serving its registered

1

agent, Corporation Services Company, addressed at 801 Adlai Stevenson Drive, Springfield, Illinois 62703

## II. JURISDICTION AND VENUE

6. This is an action for damages for failure to pay benefits under an insurance policy and other related claims over which this court has jurisdiction. Specifically, the Plaintiff is a resident of the State of Illinois and Defendant, a foreign corporation, is authorized to do business in the State of Illinois.

7. The critical illness policy at issue in the case was issued in the State of Illinois.

## III. THE CLAIM ON THE POLICY

8. Plaintiff has been a covered beneficiary under a critical illness benefits policy issued by Defendant at all times relevant to this action.

9. Plaintiff is a 48-year-old man previously employed as an "Aerospace Engineer-Contractor".

10. Aerospace Engineer-Contractor is classified under the Dictionary of Occupational Titles as Sedentary with an SVP of 8 and considered to be highly skilled work.

11. Due to Plaintiff's disabling conditions, Plaintiff was diagnosed with cancer on June 15, 2015. Plaintiff suffered from bladder cancer and the ensuing radiation and chemotherapy.

12. Plaintiff filed for critical illness benefits through the Plan administered by the Defendant.

13. Defendant denied Plaintiff's request for critical illness benefits under the Plan.

14. Subsequently, Defendant denied critical illness benefits under the Plan pursuant to a letter to Plaintiff dated November 5, 2020. Said letter allowed Plaintiff 180 days to appeal this decision.

15. At the time Defendant denied Plaintiff critical illness benefits, the standard in effect pursuant to the Plan was that Plaintiff must be considered unable to perform his "Own Occupation"/"Any Occupation".

16. If granted the Plan would pay a lump sum benefit of $100,000.

17. Plaintiff pursued his administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

18. Plaintiff timely perfected his administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

19. Plaintiff submitted additional information including medical records to show that he is totally disabled from the performance of his own and any other occupation as defined by the Plan.

20. On October 14, 2021, Defendant notified Plaintiff that Defendant affirmed its original decision to deny Plaintiff's claim for critical illness benefits.

21. Defendant also notified Plaintiff on October 14, 2021 that Plaintiff had exhausted his administrative remedies.

22. Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on his ability to engage in work activities.

23. Plaintiff has now exhausted his administrative remedies.

## IV. MEDICAL FACTS

24. Plaintiff suffers from a medical condition resulting in both exertional and nonexertional impairments.

25. Plaintiff suffers from bladder cancer, with ensuing radiation and chemotherapy.

26. Treating physicians document the history of his diagnosis and the continued pain that requires ongoing pain management.

27. Plaintiff's disorder has resulted in restrictions in activity and has significantly curtailed his ability to engage in any form of exertional activity.

28. Further, Plaintiff's physical impairments have resulted in chronic pain and discomfort.

29. Plaintiff's treating physicians document these symptoms. Plaintiff does not assert that he suffers from said symptoms based solely on his own subjective allegations.

30. Physicians have prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address his multiple symptoms.

31. However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

32. Plaintiff's documented pain is so severe that it impairs his ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, meaning an 8-hour day, day after day, week after week, month after month.

33. Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

34. The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

35. As such, Plaintiff has been and remains covered per the terms of the Policy and has sought benefits pursuant to said Policy.

36. However, after exhausting his administrative remedies, Defendant persists in denying Plaintiff his rightfully owed benefits.

## V. DEFENDANT'S UNFAIR CLAIMS HANDLING

37. Defendant's report is misleading, biased and result driven in that he/she failed to review all relevant medical records, the report ignores or is contrary to controlling medical authority. The report fails to specify the medical standard upon which it relies. The report is based on faulty or incorrect information.

39. Defendant's paid consultants performed a peer review of Plaintiff's claim file.

40. Defendant, with a pre-determined agenda to find Plaintiff not covered, relies on a biased report from its own biased hired experts. Defendant in bad faith relies on a non-treating physician, who has not conducted a physical examination of Plaintiff, over Plaintiff's treating physician who has examined Plaintiff over a long and frequent period of time, and with more knowledge of Plaintiff's condition.

41. There is an indication that an internal consultant reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

42. Defendant has selectively reviewed Plaintiff's medical records and has cherry-picked only the excerpts from the medical records that support its pre-determined conclusion that Plaintiff is covered by his diagnosis under the Plan.

43. Defendant has failed to apply proper definition of a pre-existing condition.

44. Defendant has failed to consider the side effects of Plaintiff's medications.

45. Defendant failed to allow Plaintiff an opportunity to respond to new evidence that first appeared in Defendant's final denial letter.

46. Defendant's consultants completed their reports without examining Plaintiff.

47. On October 14, 2021, Defendant notified Plaintiff that Defendant affirmed its original decision to deny Plaintiff's claim for benefits.

48. Defendant also notified Plaintiff on October 14, 2021 that Plaintiff had exhausted his administrative benefits.

49. Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and misconstrued the diagnostics findings in the records.

50. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

51. Defendant's determination was influenced by its conflict of interest.

52. Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

53. The critical illness policy gave Defendant the right to have Plaintiff to submit to a physical examination at the appeal level.

54. A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

55. More information promotes accurate claims assessment.

56. Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

57. Defendant's conduct as a whole has failed to furnish a full and fair review of Plaintiff's claim.

### VI. DEFENDANT'S UNFAIR CLAIMS HANDLING PRACTICES

58. Despite the fact that Plaintiff's policy was written to protect him from a diagnosis of "cancer," Defendant found that preliminary testing for UTI evidenced a pre-existing condition of "cancer."

59. Defendant failed to render its administration of his policy under strict pre-existing terms.

60. Defendant also predicated its original denial of his claim based on a biased misinterpretation of a provision that put the Plaintiff's life and health at risk, despite argument that Plaintiff's condition was unknown at the time of the policy coverage.

61. Defendant failed to consider Plaintiff's credible limitations to his ability to function.

62. Defendant selectively reviewed Plaintiff's medical records and gave weight only to the excerpts from the medical records that supports its conclusion that Plaintiff failed to meet all applicable provisions under the policy.

63. Defendant repeatedly asked for documentation Plaintiff and his providers had previously submitted.

64. Defendant caused unreasonable delay in its claims processing by failing to timely review evidence and notice Plaintiff of what information was necessary for its review.

65. Defendant only relied on evidence from its own reviews, prejudicing Plaintiff's claim.

66. Defendant failed to give any weight to Plaintiff's appeal arguments.

67. Defendant continues to ignore the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on his diagnoses.

68. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

69. Defendant's determination was influenced by its bias and conflict of interest.

70. Defendant has failed to take active steps to reduce potential bias and to promoted accuracy of its benefits determinations.

71. The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

72. A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

73. More information promotes accurate claims assessment.

74. Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

75. Despite Plaintiff's requests, Defendant has failed and refused to produce all documentation and other material upon which it based its decision to deny Plaintiff's benefits.

76. As a result of Defendant's unwarranted denial of his benefits, Plaintiff has been forced to incur the delay and expense necessary to engage the services of attorneys to institute litigation against his insurer.

77. Defendant's conduct as a whole has failed to furnish and full and fair review of Plaintiff's claim.

### VII.    FIRST CAUSE OF ACTION

### Breach of Contract

78. Plaintiff repeats and re-alleges each and every allegation above and incorporates them herein.

79. Plaintiff purchased Defendant's cancer insurance policy with the promise that if he were to be diagnosed with cancer and unable to perform his occupation, Defendant would pay a monthly sum to replace his loss of income.

80. Plaintiff paid all premiums due and fulfilled all other conditions of the Plan.

81. Defendant, for its promise to pay this monthly benefit, collected monthly premiums from Plaintiff from the date of the Plan's inception.

82. Under the terms of the Plan, Defendant is obligated to pay Plaintiff benefits, in full for a critical illness he has been diagnosed with.

83. In breach of its obligations under the aforementioned Plan, Defendant has failed to pay Plaintiff benefits in full for his critical illness, as those words are defined in the Plan.

84. Defendant stopped paying benefits to Plaintiff under the Plan, despite the fact that Plaintiff a defined critical illness under the Policy terms.

85. Defendant breached the Plan when it denied paying benefits to Plaintiff, despite the fact that Plaintiff has a critical illness under the plan, as that phrase is defined in the plans. Defendant has violated its contractual obligation to furnish benefits to Plaintiff.

86. Plaintiff has complied with all policy provisions and conditions precedent to qualify for benefits prior to filing suit.

87. As a result of Defendant's breach, Plaintiff suffered financial hardship.

88. Defendant failed to cure its wrongful conduct or pay Plaintiff's claims.

## VIII. SECOND CAUSE OF ACTION

### Bad Faith under 215 ILCS § 155

89. Plaintiff repeats and re-alleges each and every allegation above and incorporates them herein.

90. Defendant's selling Plaintiff the insurance policy, collecting premiums, and subsequently denying coverage and benefits under the policy was done in bad faith.

91. Defendant has violated 215 ILCS § 155.

92. Under Section 155 of the Illinois Insurance Code, an insured or an assignee may recover damages from an insurer if the insurer disputes the amount of the loss

payable on a claim, delays settling a claim, or refused to provide coverage and the insurer's action or delay was unreasonable and vexatious, 215 ILCS § 155.

93. The denial of Plaintiff's benefits was done vexatiously and unreasonably and in bad faith.

94. When Plaintiff filed his claim with Defendant, Defendant discredited his doctor's opinions and misinterpreted terms in the policy in order to fabricate and support its denial of his claim.

95. Defendant has violated multiple provisions of the Insurance Code in the following purposeful actions:

 (a) By failing to pay benefits to Plaintiff when Defendant knew or reasonably should have known that Plaintiff was entitled to such benefits;

 (b) By failing to investigate Plaintiff's claim adequately;

 (c) By failing to evaluate Plaintiff's claim objectively;

 (d) By interpreting ambiguous Plan provisions against Plaintiff and in favor of its own financial interests unreasonably;

 (e) By interpreting the factual circumstances of Plaintiff's condition against Plaintiff and in favor of its own financial interests;

 (f) By failing to afford proper weight to the evidence in the administrative record showing that Plaintiff is disabled, including several determinations from Plaintiff's treating healthcare providers;

 (g) By misrepresenting Plan coverage, conditions, exclusions, and other provisions;

(h) By interpreting the definition of pre-existing contained in the Plan contrary to the plain language of the Policy and in an unreasonable, arbitrary, and capricious manner;

(i) By failing to provide a reasonable explanation of the basis for the denial of benefits to Plaintiff;

(j) By compelling Plaintiff to initiate this action to obtain the benefits to which Plaintiff was entitled under the Plan;

(k) By failing to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

(l) By interpreting the definitions of critical illness and pre-existing condition contained in the policy contrary to the plain language of the policy and in an unreasonable, arbitrary, and capricious manner;

(m) By failing to furnish Plaintiff a full and fair review;

(n) By failing to specify information necessary to perfect Plaintiff's appeal;

(o) By denying Plaintiff based on a selective and incomplete review of the records;

(p) By ignoring Plaintiff's treating healthcare providers' opinions;

(q) By wrongfully denying Plaintiff's benefits without evidence of improvement;

(r) By failing to credit Plaintiff's credible complaints of pain and fatigue;

(s) By failing to consider the side effects of Plaintiff's medications;

(t) By failing to give Plaintiff an opportunity to respond to new evidence;

  (u) By repeatedly asking for Plaintiff to send the same documentation when it had been sent before several times;

  (v) By taking an unreasonable amount of time to review said documentation;

  (w) By repeatedly asking the same questions about Plaintiff's health;

  (x) By repeatedly using the same information to deny Plaintiff's claim even after the information had been rebutted by medical opinion;

  (y) By failing to provide substantial evidence to support its opinion related to its decision; and

  (z) By causing unnecessary delays in the claim determination;

96. By reason of Defendant's bad faith actions, Plaintiff suffered financial hardship, substantial emotional duress, mental anguish, and pain and suffering which exacerbated his depression and anxiety.

97. The actions of Defendant amount to tortuous conduct directed at Plaintiff, a consumer of insurance.

98. Defendant's actions directed at Plaintiff are part of a pattern of similar conduct directed at the public generally.

99. Defendant's actions were and are materially misleading and have caused injury to Plaintiff.

100. Defendant unreasonably relied on its own flawed review of the records instead of in-person medical examination to decide to discontinue paying benefits.

### IX. PRAYER FOR RELIEF

Plaintiffs pray for judgment against Defendant in amounts to be proven at trial and for the following specific relief:

(a) General damages including, but not limited to, the consequential damages to Plaintiffs' economic welfare from the wrongful denial and delay of benefits, the emotional distress and physical suffering resulting from this wrongful denial of benefits, and the other actual damages permitted by law or equity;

(b) Special damages including, but not limited to, payment of all benefits due under the terms of the Plan;

(c) Reasonable attorney's fees and costs pursuant to the bad faith actions and all other authority in equity or at law;

(d) Treble damages pursuant to 215 ILCS § 155, and all other authority in equity or at law;

(e) Pre- and post-judgment interest at the maximum legal rate;

(f) A declaratory judgment requiring the Defendant to pay all benefits according to the terms of the Plan,

(g) For all other relief as the Court may deem just and equitable.

Dated: November 4, 2022.

Respectfully submitted,

By: /s/ Mario Rodriguez

PLAINTIFF,
MARIO RODRIGUEZ
Pro se
420 East Waterside Apt 3204
Chicago, IL 60601
b.mariorodriguez@gmail.com
206-395-4248