## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARIO RODRIGUEZ,

Plaintiff,

v.

MUTUAL OF OMAHA,

Defendant.

Case No. 1:22-cv-06121

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Mario Rodriguez has sued Defendant Mutual of Omaha ("MOO") for breach of contract and bad faith conduct under 215 ILCS § 155. Before the Court now is MOO's motion for summary judgment on all claims. For the reasons stated below, MOO's motion for summary judgment [133] is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

1

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## BACKGROUND

### I.    Local Rule 56.1

"Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (quotation omitted). "[I]t is within the district court's discretion to strictly enforce local rules regarding summary judgment by accepting the movant's version of facts

2

as undisputed if the non-movant has failed to respond in the form required." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014).

If a party disputes an asserted fact, the "party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Noe v. Smart Mortg. Centers, Inc.*, No. 1:21-CV-01668, 2024 WL 4346562, at *2 (N.D. Ill. Sept. 29, 2024) (quoting L.R. 56.1(e)(3)). "A district court is not required to wade through improper denials and legal arguments in search of a genuinely disputed fact." *Id.* (quoting *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)).

Rodriguez did not file a response to MOO's statement of facts as required by Local Rule 56.1(b). In Rodriguez's response in opposition to MOO's motion for summary judgment ("Plaintiff's Response"), Rodriguez attempted to dispute various facts contained in MOO's Rule 56.1 statement, but he failed to cite "specific evidentiary material" that controverted any facts in MOO's statement of facts. [150] at 20, 25.[1] As a result, all of MOO's statements of fact are deemed admitted. The Court addresses any relevant attempted disputes of fact in the footnotes below.

## II.    Factual Background

---

[1] The Court reviewed Rodriguez's proposed changes to his response brief which are contained in Exhibit A to the renewed motion for leave to amend that Rodriguez filed on January 13, 2025. [150] at 8-28. The Court compared Rodriguez's original response, [146], to his proposed response, [150], and did not identify any substantive changes. The Court will refer to Rodriguez's proposed response in this opinion and order. The Court will also enter a separate order granting Rodriguez's renewed motion for leave to amend his reply brief and will direct Rodriguez to file Exhibit A to that motion.

On April 27, 2020, Rodriguez was seen by Dr. Lev Elterman, a urologist, for hematuria, which is blood in the urine. [135] ¶ 12. Dr. Elterman's notes stated that he "had a detailed discussion with the patient about gross hematuria." [135] ¶ 12. In his deposition, Dr. Elterman explained that the "detailed discussion with the patient about gross hematuria" included the possibility that hematuria could be caused by bladder cancer. [135] ¶ 13. Dr. Elterman also stated that, at the time of the visit, he had not ruled out bladder cancer and he ordered urinalysis to further investigate Rodriguez's hematuria. [135] ¶ 13. Rodriguez completed the urinalysis on April 29, 2020. [135] ¶ 14. Next, Dr. Elterman saw Rodriguez on May 11, 2020. [135] ¶ 15. At this appointment, Dr. Elterman ruled out an infection but did not rule out cancer, and he ordered a cystoscopy and a CT scan urogram. [135] ¶ 15.

On May 18, 2020, Rodriguez, with the assistance of his agent, Mario Ordonez, completed a supplemental health insurance application (the "Application") for lump sum critical illness benefits with MOO. [135] ¶ 4. The lump sum critical illness benefit policy would pay the insured $100,000 upon a diagnosis of certain cancers if the other policy terms and conditions were satisfied and no exclusions applied. [135] ¶ 5. Section E, Section 2, Question 2 of the Application asked the following:

> Within the past 3 years, has any Proposed Insured been advised by a medical professional to undergo treatment, testing or had tests performed where the results are pending, not been received, abnormal or inconclusive for which a medical professional has not ruled out cancer? If "Yes," who?

[135] ¶ 6. Rodriguez answered "no" to this question. [135] ¶ 6. The Application asked the applicant to represent that their answers were true and complete, and the

Application indicated that "[i]ncorrect or misleading answers may void th[e] [A]pplication and any issued policy from its effective date." [135] ¶ 7.

MOO issued Policy number CP4UI-977705-94M (the "Policy") with an effective date of May 19, 2020. [135] ¶ 8. The Policy contained the following language:

REVIEW YOUR APPLICATION

Please review the attached copy of your application. Your application becomes a part of your policy. If anything in your application is incorrect or if any past medical history has been left out, you must tell us right away. We issued your policy on the basis that all information shown in the application is correct and complete. If it is not, your policy may not be valid.

30-DAY RIGHT TO RETURN POLICY

You have 30 days from the date of its delivery to review your policy. If during that time you are not satisfied with it, you can return your policy to us or your agent. We will promptly refund all premiums you paid. Your policy will then be considered never to have been issued.

30-DAY PROBATIONARY PERIOD FOR CANCER

Your policy has a 30-day probationary period for cancer. Subject to the Pre-Existing Condition Limitation provision requirements, in order to be covered, cancer must be:

(a) diagnosed while this policy is in force; and
(b) diagnosed at least 30 days after the policy effective date or at least 30 days after any policy reinstatement date.

If an insured person is diagnosed with cancer during the policy probationary period, we will not pay benefits for that insured person. Coverage for that insured person will end as of the policy effective date. We will refund any unearned premium for that insured person.

[135] ¶ 9. Rodriguez received the Policy and the Application in the mail but does not recall reading them. [135] ¶ 10. Prior to June 21, 2020, Rodriguez never asked MOO to cancel his Policy. [135] ¶ 11.

On May 29, 2020, Rodriguez saw Dr. William Catalona, a urologist and professor of urology at Northwestern University, about his hematuria. [135] ¶ 17. During the visit, Dr. Catalona reviewed CT urogram results that showed a bladder tumor suggestive of cancer. [135] ¶ 17. Dr. Catalona also performed a cystoscopy that was positive for bladder cancer. [135] ¶ 18. Dr. Catalona testified that he considers Rodriguez as having been diagnosed with bladder cancer as of June 3, 2020. [135] ¶ 18. On June 6, 2020, Dr. Joshua Meeks performed a bladder resection and biopsy on Rodriguez. [135] ¶ 19. Dr. Carla Ellis, a board-certified pathologist, read the slides containing the bladder tissue that was collected on June 6, 2020, and provided a final diagnosis of bladder cancer on June 10, 2020. [135] ¶¶ 20-22.[2] On June 22, 2022, Dr. Bonnie Choy examined a lab specimen that was different from the specimen that Dr. Ellis examined on June 10, 2022. [135] ¶ 24.[3]

Towards the end of June 2020, Rodriguez applied for benefits under the Policy. [135] ¶ 26. MOO acknowledged Rodriguez's claim and asked Rodriguez to complete

[2] In Plaintiff's Response, Rodriguez stated "[g]enuine issues of material fact **exist**, including the timeline of Plaintiff's diagnosis." [150] at 20 (emphasis in original). Rodriguez asserts that he was "conclusively diagnosed with Stage 2 bladder cancer on June 20, 2020, based on a pathology report. Dr. Catalona confirmed that Plaintiff did not know of or see the final diagnosis until after the pathology report was completed and communicated to him." [150] at 25. Rodriguez does not cite to the record to support his assertion that he "was conclusively diagnosed with Stage 2 bladder cancer on June 20, 2020." Rodriguez provides cites to the record for the fact that "Dr. Catalona confirmed that Plaintiff did not know of or see the final diagnosis until after the pathology report was completed and communicated to him," [150] at 25; however, this statement does not dispute the fact at issue which is that Dr. Ellis confirmed bladder cancer on June 10, 2020. In addition, an exhibit Rodriguez provided shows that Dr. Catalona testified that two pathology tissue samples were collected from Rodriguez and analyzed which resulted in cancer being diagnosed twice—on June 10, 2020 and on June 22, 2020, [147] at 183-84, 199, 208-10, which supports MOO's statements that are in question.

[3] Plaintiff filed a motion for leave to file a sur-reply (the "Sur-reply Motion") and stated that "Defendant raises a new timeline argument [in reply], relying on two separate pathology reports (June 10 and June 22) to allege earlier diagnostic dates." [152] at 2. The Court disagrees with Rodriguez's assertion. MOO's statement of facts clearly refers to June 10, 2020 and June 22, 2020 as two separates days when biopsy tissues were examined by doctors. [135] ¶¶ 19-22, 24.

an authorization and a Claimant's Statement for Critical Illness Insurance Benefits. [135] ¶ 26. MOO also asked Rodriguez to have the physician treating him complete a Confidential Physician's Report. [135] ¶ 26. On his Claimant's Statement for Critical Illness Insurance Benefits, Rodriguez indicated that his medical condition was cancer that was diagnosed or a surgical procedure performed on June 13, 2020. [135] ¶ 29. On the Confidential Physician's Report, Dr. Alicia Morgans, an oncologist, indicated that Rodriguez's cancer was diagnosed on June 6, 2020, and that he was advised of the diagnosis on June 15, 2020. [135] ¶ 30. MOO also obtained Rodriguez's pharmacy records and medical records from Dr. Elterman, Dr. Catalona/Galter Urology, Midwest Orthopedics at Rush, and Michigan Avenue Primary Care as a part of investigating Rodriguez's claim. [135] ¶ 31.

On November 5, 2020, MOO denied Rodriguez's claim based on the Application, the Policy, the documents received from Rodriguez and his treating physicians, and MOO's underwriting department's conclusions. [135] ¶ 35. In a letter to Rodriguez, MOO explained that Rodriguez answered Section E, Section 2, Question 2 of the Application incorrectly because he was being treated for hematuria and, on May 11, 2020, Dr. Elterman recommended that Rodriguez have a CT scan and cystoscopy. [135] ¶ 35.[4] MOO also stated that had it "been aware of these facts at the time the [P]olicy was applied for, [the Policy] would not have been issued," and, as a

---

[4] In Plaintiff's Response, Rodriguez states "[g]enuine issues of material fact **exist**, including . . . the interpretation of his application answers." [150] at 20 (emphasis in original). Rodriguez does not dispute that MOO stated it rescinded the Policy in part because MOO believed he answered Section E, Section 2, Question 2 of the Application incorrectly. Rodriguez also does not dispute that MOO upheld its decision in part because it viewed Rodriguez as having answered that question incorrectly. MOO's statements of fact regarding MOO's reliance on Rodriguez's response to Section E, Section 2, Question 2 of the Application when rescinding the Policy are deemed admitted pursuant to Rule 56.1.

result, it was rescinding the Policy, MOO would refund the premium that Rodriguez paid, and no claims were payable. [135] ¶ 35. MOO refunded the premium in a check dated November 12, 2020, which was cashed by Rodriguez. [135] ¶ 36.

After Rodriguez appealed the denial, MOO re-reviewed the evidence. [135] ¶ 39. On July 29, 2021, MOO upheld the denial and, in a letter to Rodriguez, re-stated that Rodriguez should have answered "yes" to Section E, Section 2, Question 2 of the Application. [135] ¶ 39. MOO also included language from the "30-DAY PROBATIONARY PERIOD FOR CANCER" section of the Policy and stated "**even if we did not rescind the [P]olicy, we would have terminated coverage and refunded any premium" because Rodriguez was diagnosed with urothelial carcinoma on June 3, 2020, which was within the 30-Day Probationary Period**. [135] ¶ 39. (emphasis added).[5] On October 14, 2021, MOO upheld the denial after Rodriguez, who had obtained counsel, made another appeal. [135] ¶ 44. In a letter to Rodriguez's counsel, MOO referred to both Rodriguez's response to Section E, Section 2, Question 2 of the Application and the 30-Day Probationary Period in support of upholding the denial. [135] ¶ 44. In addition, MOO stated the 30-Day Probationary Period for the Policy ran between May 19, 2020 and June 18, 2020. [135] ¶ 44.

---

[5] In Plaintiff's Response, Rodriguez states "[g]enuine issues of material fact **exist**, including . . . the enforceability of the 30-day probationary period." [150] at 20 (emphasis in original). However, the enforceability of the 30-Day Probationary Period is an issue of law not an issue of fact. *See Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998) ("Illinois law . . . treats the interpretation of an insurance policy and the respective rights and obligations of the insurer and the insured as questions of law that the court may resolve summarily.")

## ANALYSIS

MOO argues it is entitled to summary judgment for two reasons: 1) MOO did not breach the Policy and 2) MOO's conduct in denying Rodriguez's claim was not vexatious or unreasonable as a matter of law. The Court agrees with MOO on both issues.

**I.    Summary Judgment on the Breach of Contract Claim Is Appropriate Because It Is Undisputed that Rodriguez Was Diagnosed with Cancer Within the 30-Day Probationary Period.**

Under Illinois law, summary judgment is well-suited for determining the construction of an insurance policy, as interpreting an insurance policy is a question of law. *Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998).[6]

> *a.  The contract at issue was formed by both the Application and the Policy.*

The parties do not dispute that Rodriguez applied for insurance on May 18, 2020, and MOO sent Rodriguez the Policy which had an effective date of May 19, 2020, and included the 30-Day Probationary Period. Rodriguez argues that he formed a valid contract with MOO when he signed the Application, and MOO cannot move for summary judgment based on the 30-Day Probationary Period in the Policy because the contract at issue, the Application, did not include the 30-Day Probationary Period. [150] at 12.

"The law is well settled that an application for . . . insurance itself is not the contract, but is a mere offer or proposal for a contract of insurance." *Jacobson v. Mut.*

---

[6] MOO argues that "[b]ecause this case is one based on diversity jurisdiction, Illinois substantive law controls," [134] at 18, and Rodriguez appears to agree by citing Illinois law in his response, [150].

*Life Ins. Co. of N.Y.*, 271 F.2d 620, 622 (7th Cir. 1959); *Wallace v. Prudential Ins. Co. of Am.*, 299 N.E.2d 344, 347 (Ill. App. Ct. 1973) ("An application for insurance is a mere offer; it creates no rights and imposes no duty upon the insurer."). The application is merely a step in the creation of an insurance contract. *Jacobson*, 271 F.2d at 622. "The policy, with all its terms and conditions, with the application as a part of it, constitute the contract of insurance." *People ex rel. v. Mut. Life Ins. Co.*, 72 Ill. App. 569, 575 (Ill. App. Ct. 1897). Here, the contract at issue is compromised of the Policy with the Application as a part of it.

> b. *Rodriguez accepted the Policy, including the 30-Day Probationary Period, by failing to dispute the terms in the Policy before paying the premium and asserting a claim for benefits.*

Rodriguez argues that the 30-Day Probationary Period is unenforceable because he did not agree to MOO including the term in the Policy, and the term was not explained to him or contemplated by him prior to signing the Application. [150] at 16-18. In support, Rodriguez states "[i]f terms in the issued policy differ from the signed application, the terms in the application or those reasonably expected by the insured will control." [150] at 17. However, the case Rodriguez cites in support does not address a conflict between an insurance application and an insurance policy. *See Progressive Universal Ins. Co. of Illinois v. Liberty Mut. Fire Ins. Co.*, 828 N.E.2d 1175, 1186 (Ill. 2005) (finding an exclusion in a policy issued by the insurer was not void or unenforceable).

Rodriguez also asserts that Illinois law requires insurers to disclose all material exclusions at the time of application and terms added without adequate

10

disclosure are unenforceable and violate the law of reasonable expectations. [150] at 17, 20-21, 24. However, the cases Rodriguez points to do not address what insurers are required to disclose at the time an insurance application is signed. *See Med. Protective Co. v. Kim*, 507 F.3d 1076 (7th Cir. 2007) (addressing whether the insurer had a duty to defend based on the policy language and whether the insured made a material misrepresentation in his policy application such that the insurer did not have a duty to defend); *Smagala v. Owen*, 717 N.E.2d 491, 495–96 (Ill. App. Ct. 1999) (discussing whether the plaintiff timely filed suit against defendant and whether the insurance policy was against public policy). The doctrine of reasonable expectations, which states that the "objectively reasonable expectation of all applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations," is addressed in one of the cases that Rodriguez cites. *Smagala*, 717 N.E.2d at 496 (internal citations omitted). The *Smagala* court stated the doctrine had been rejected by Illinois courts; however, the court noted that the doctrine has been used as a *tool of construction* in assessing the intent of the parties when a contract *is ambiguous*. *Id*. at 496-97 (emphasis added). Where the policy is not ambiguous, as is the case here for reasons mentioned below, the reasonable expectations test is inapplicable. *Id.*

In response to Rodriguez's arguments, MOO asserts that "Rodriguez had a duty to review his Policy . . . and his not doing so, paying his premiums, and asserting

a claim for benefits equates to accepting the Policy's terms." [151] at 6-7. The Court agrees with MOO.

Illinois law imposes a duty on an insured to review the terms of an insurance policy issued to him and to know the contents of that policy. *See Golf v. Henderson*, 876 N.E.2d 105, 111 (Ill. App. Ct. 2007); *Commonwealth Ins. Co. v. Stone Container Corp.*, 351 F.3d 774, 780 (7th Cir. 2003). An insured also is obligated to inform the insurer of any discrepancies between the policy received and the policy requested. *Jacobs v. Paul Revere Life Ins. Co.*, 2004 WL 3119012, at *6 (N.D. Ill. Dec. 17, 2004); *Golf*, 876 N.E.2d at 111. "Illinois courts have repeatedly held that when an insured sues his or her insurer after failing to note a discrepancy between the policy issued and received and the policy requested or expected, the insured will be bound by the contract terms . . . . " *Perelman v. Fisher*, 700 N.E.2d 189, 192 (Ill. App. Ct. 1998). Although laymen may not read their insurance policies as common practice, courts have not excused plaintiffs from their burden of knowing the contents of the policy when there are no allegations that the language of the policy was ambiguous. *Id.*

When an insured has alleged that a policy varied from an application, courts have found that the policy constituted a counteroffer that the insured then had to accept. *Jacobson,* 271 F.2d at 622. Courts have found that a counteroffer was accepted where plaintiff paid premiums. *Id.* ("[T]he policy was accepted by the insured who paid the correct premiums for the benefits described in the policy for twenty-one years."); *Nat'l Prod. Workers Union Ins. Tr. v. Life Ins. Co. N. Am.*, No. 05-CV-5415, 2010 WL 1292429, at *15 (N.D. Ill. Mar. 29, 2010), aff'd sub nom. *Nat'l Prod. Workers*

*Union Ins. Tr. v. Cigna Corp.*, 665 F.3d 897 (7th Cir. 2011) ("[F]ailure to object to [disputed] terms, as well as . . . payment of the premiums, constituted acceptance of the policies."). Here, Rodriguez paid the premium, did not object to the 30-Day Probationary Period, and submitted a claim to MOO. The Court finds Rodriguez accepted the Policy.

### c. *The Policy contained an enforceable 30-Day Probationary Period.*

The primary objective in construing the language of a policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. *Commonwealth Ins. Co.*, 351 F.3d at 777 (quoting *McKinney v. Allstate Insurance Co.*, 722 N.E.2d 1125, 1127 (Ill. 1999)). If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning, but if the terms are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. *Id*. Courts will not strain to find ambiguity in an insurance policy where none exists. *Id*. The Policy contained the following language:

> 30-DAY PROBATIONARY PERIOD FOR CANCER
>
> Your policy has a 30-day probationary period for cancer. Subject to the Pre-Existing Condition Limitation provision requirements, in order to be covered, cancer must be:
>
> (a) diagnosed while this policy is in force; and
> (b) diagnosed at least 30 days after the policy effective date or at least 30 days after any policy reinstatement date.
>
> If an insured person is diagnosed with cancer during the policy probationary period, we will not pay benefits for that insured person. Coverage for that insured person will end as of the policy effective date. We will refund any unearned premium for that insured person.

[135] ¶ 9. Rodriguez does not argue that the language is ambiguous. Instead, as discussed herein, Rodriguez argues the 30-day Probationary Period is unenforceable on other grounds. The Court finds this language unambiguous.

> ### d. The undisputed facts show that Rodriguez was diagnosed with cancer prior to June 18, 2020, which was within the 30-Day Probationary Period.

Dr. Catalona testified that Rodriguez was diagnosed with cancer on June 3, 2020. Dr. Ellis provided a final diagnosis of bladder cancer on June 10, 2020. In a document that Rodriguez provided to MOO as a part of the claim process, Rodriguez indicated that his medical condition was cancer that was diagnosed or a surgical procedure performed on June 13, 2020, and in a document completed by Dr. Morgans, the physician treating him, Dr. Morgans stated that Rodriguez's cancer was diagnosed on June 6, 2020, and that he was advised of the diagnosis on June 15, 2020. The record shows that Rodriguez was diagnosed within the 30-Day Probationary Period which ended on June 18, 2020.[7] Because MOO properly denied benefits under

---

[7] In the Sur-reply Motion, Rodriguez states that "Defendant selectively cites [in reply] additional testimony from Plaintiff's treating physicians (e.g., from Dr. Catalona and Dr. Ellis) and internal underwriting documents that were not previously cited or discussed in their original MSJ." [152] at 5. Rodriguez did not point to specific testimony that MOO impermissibly included in reply, and the Court has not identified any. Rodriguez also did not identify the "internal underwriting documents that were not previously cited or discussed." [152] at 5. However, the Court believes Rodriguez is likely objecting to arguments that MOO makes in its reply that rely on WF-RODRIGUEZ-00004, [151] at 6, and WF-Rodriguez-000043-48, [151] at 8. The Court did not rely on or cite those arguments in this opinion and order. The Court also did not rely on or cite *Grinnell Mutual Reinsurance Co. v. S.B.C. Flood Waste Sols., Inc.*, 113 F.4th 768 (7th Cir. 2024), which is the legal authority that Rodriguez argues was impermissibly included in MOO's reply. [152] at 2. Lastly, the Court did not rely on the June 15, 2020 date, which was mentioned in Rodriguez's original complaint, as a binding admission by Rodriguez of his date of diagnosis. [152] at 2.

the Policy due to the 30-Day Probationary Period, MOO did not breach its contract with Rodriguez.[8]

## II. Summary Judgment is Appropriate for Rodriguez's Claim of Bad Faith Conduct under 215 ILCS § 155 Because MOO Did Not Breach Any Contract.

The Illinois insurance code allows courts to award costs and attorney's fees to an insured when an insurer's action is deemed "vexatious and unreasonable." 215 ILCS § 5/155(1). Whether an insurer acted unreasonably or vexatiously presents an issue of fact, requiring courts to consider the totality of circumstances. *Med. Protective Co.*, 507 F.3d at 1086–87 (internal citations omitted). Where no benefits are owed under the terms of an insurance policy, a claim of bad-faith denial under 215 ILCS 5/155 necessarily fails. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021). For the reasons stated herein, MOO did not owe Rodriguez benefits under the Policy. The Court grants MOO's motion for summary judgment on the issue of whether Rodriguez is entitled to fees under 215 ILCS § 5/155.

## CONCLUSION

For the stated reasons, MOO's motion for summary judgment [133] is granted.[9] The Clerk is directed to enter judgment in Defendant's favor and against Plaintiff and terminate the case. All other motions and deadlines denied as moot.

---

[8] The Court does not reach MOO's other arguments in support of granting its motion for summary judgment on the breach of contract claim because the Court found the argument based on the 30-Day Probationary Period sufficient.

[9] Rodriguez repeatedly states that MOO failed to notify him prior to filing the motion for summary judgment and to hold a hearing before the Court to narrow the issues as required by Northern District of Illinois standing orders. [150] at 11-12, 18, 23. Rodriguez argues that MOO's failure to comply with those standing orders "further demonstrate[es] the existence of unresolved factual disputes." [150] at 23. Rodriguez did not cite any cases supporting his position. In addition, the Court previously

E N T E R:

Dated: March 27, 2025

_____
MARY M. ROWLAND
United States District Judge

---

explained that "conferring prior to filing a motion for summary judgment is not required . . . [and as] Plaintiff is already very familiar with the provisions of LR 56.2 <u>140</u> at 2 and Ex. 2, and the Court gave Plaintiff 5 months to respond to the motion for summary judgment <u>139</u>, any error is harmless." [141].